IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRINA GARNETT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JOHN E. WETZEL, Secretary, Pennsylvania | : | |
| Dept. of Corrections and NANCY GIROUX, | : | |
| Superintendent of State Correctional | : | |
| Institute at Muncy | : | NO. 13-3439 |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                                              **August 17, 2016**

Trina Garnett, like all other juveniles in Pennsylvania who were sentenced to life without parole after having been convicted of murder, has never been afforded a constitutionally required individualized sentencing hearing. Now, as mandated by *Miller v. Alabama*, 567 U.S. __, 132 S. Ct. 2455 (2012) and *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016), she must be resentenced, taking into consideration the factors peculiar to his youthful status at the time of the offense and original sentencing.

Garnett filed a habeas petition under 28 U.S.C. § 2254 seeking vacation of her sentence. She relies on *Miller* which held that a mandatory life sentence without parole for a juvenile convicted of murder is unconstitutional. Since she filed her petition, the Supreme Court in *Montgomery* held that the *Miller* holding applied retroactively to cases on collateral review.

We shall grant Garnett's habeas petition and order the state court to resentence her. The sentencing hearing must be conducted within the framework of *Miller* and *Montgomery*. The sentencing court must adhere to the process dictated by these cases. That means the court must consider the rationale for treating juveniles differently from

adults and then account for those differences in determining an individualized, proportionate sentence.

## The Resentencing Framework and Requirements

The *Miller* court found "three significant gaps between juveniles and adults": (1) the juveniles' "lack of maturity and an underdeveloped sense of responsibility"; (2) their vulnerability "to negative influence and outside pressures" which limit "control over their own environment," resulting in "lack of ability to extricate themselves from horrific, crime-producing settings"; (3) their unformed character and traits that militate against a finding of "irretrievable depravity." *Miller*, 132 S. Ct. at 2464 (citing and quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010); *Roper v. Simmons*, 543 U.S. 551, 569-70 (2005)). The *Miller* court relied on common sense and "developments in psychology and brain science" which demonstrated "transient rashness, proclivity for risks, and inability to assess consequences." *Id.* at 2464-65. Based upon these factors, "children are constitutionally different from adults for purposes of sentencing." *Montgomery*, 136 S. Ct. at 733. Thus, juveniles must be treated differently from adults in sentencing. *Miller*, 132 S. Ct. at 2469.

In recognition of these differences between juveniles and adults, the sentencing court must consider factors unique to juveniles. These include the juvenile's chronological age and with it his immaturity, impulsivity, failure to appreciate the risks and consequences of his actions; his family and home environment; the extent of his participation in the homicide; the role of familial and peer pressure; his inability to deal with the police, prosecutor and his own attorney; and, significantly, the possibility of rehabilitation. *Id.* at 2468.

None of these factors were taken into account when Garnett was sentenced. Now,

they must be.

There is no question that resentencing a defendant decades after a conviction presents a difficult, time-consuming and fact-intensive task. Yet, it is a task that must be undertaken if we are to remain faithful to the devotion to individualized sentencing and to take into account, as *Miller* mandates, how children are different from adults.

Accounting for the factors informing choices the defendant made when he committed the offense and the forces that influenced his immature decision-making will vary in each case. The passage of time, fading memories, long-gone witnesses and missing records make accurately presenting a picture of the defendant at the time of his offense difficult. But, it is not impossible. The parties and the sentencing court can call upon appropriate experts to opine on the defendant's mental and psychological condition, and his level of maturity at the time of the offense. Indeed, expert testimony may be necessary.

Of all the factors, the potential for reform is the most critical. The other factors may explain how and why the juvenile acted when he committed the offense. The rehabilitation factor tells us how she has acted more recently and helps predict how she will act in the future. It addresses the question of whether the defendant is beyond reform and is incorrigible.

*Miller* and *Montgomery* emphasize the importance of the potential for reform and rehabilitation in sentencing juveniles. Thus, the sentencing hearing must give the defendant "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Miller*, 132 S. Ct. at 2469 (quoting *Graham*, 130 S. Ct. at 2030).

The science has shown that juveniles have a diminished sense of culpability and a

greater potential for reform. Their immaturity is transient. *Montgomery*, 136 S. Ct. at 734. They have the capacity for positive change and development. *Id.*

Post-sentencing rehabilitation takes on added significance in the resentencing process. Unlike the other factors, it presents the most up-to-date information about the offender's history and characteristics. It is highly relevant to his amenability to rehabilitation. It informs the assessment of whether the offender is permanently incorrigible or irreparably corrupt, placing her into the "rarest of juvenile offender" status deserving of life imprisonment. It is a factor that removes much of the guess work from predicting whether the offender is capable of being rehabilitated.

Since her conviction, Garnett has been in prison where her conduct and amenability to rehabilitation have been revealed to prison authorities. Her conduct since she has been incarcerated is a significant factor to be considered. Ironically, the sentencing court will be in a better position to assess Garnett's potential for rehabilitation than a court would have been four decades earlier at the time of her conviction.

After considering the defendant as an individual and "as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue," the sentencing judge must impose a sentence that is proportionate. *United States v. Pepper*, 131 S. Ct. 1229, 1240 (2011). Thus, "punishment should fit the offender and not merely the crime." *Id.* (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)).

In Pennsylvania, the sentencing judge must fix both the minimum and the maximum of the term of imprisonment after an individualized hearing taking into consideration all relevant facts.[1] Routinely fixing the maximum of each sentence at life contradicts a sense

---

[1] The minimum can not exceed one-half the maximum. 42 Pa.C.S. § 9756(b)(1).

of proportionality and smacks of categorical uniformity.  A sentencing practice that results in every juvenile's sentence with a maximum term of life, regardless of the minimum term, does not reflect individualized sentencing.  Placing the decision with the Parole Board, with its limited resources and lack of sentencing expertise, is not a substitute for a judicially imposed sentence.  Passing off the ultimate decision to the Parole Board in every case reflects an abdication of judicial responsibility and ignores the *Miller* mandate.

*Montgomery* made clear that a life sentence is reserved for the rarest of the permanently incorrigible or irreparably corrupt juveniles.  *Montgomery*, 136 S. Ct. at 734.  Fixing the maximum sentence at life permits the Parole Board to deny parole, effectively working to imprison the defendant for the duration of his life.  As long as the Parole Board has the authority to refuse to grant parole, life without parole remains a possibility regardless of the individual's peculiar situation.  If the sentencing court finds that the defendant is not corruptible and not incorrigible, it must impose a maximum sentence less than life to reflect that finding.  It can not avoid determining whether the defendant is irreparably corrupt and permanently incorrigible.

No one can doubt that there are defendants who should be released immediately after a weighing of all the factors.  There are those whose rehabilitation will be beyond question.  In those instances, the sentencing court can not discharge its responsibility by passing the decision to the Parole Board.

Defendants, some now graying adults, should not be required to suffer delay and another proceeding before gaining the freedom they already deserve had the sentencing judge conducted a thorough sentencing hearing applying the principles prescribed by *Miller* and *Montgomery*.

The Pennsylvania Dilemma

In Pennsylvania, the sentencing court is faced with a dilemma. The statute which applied in Garnett's case has been declared unconstitutional. The new statute does not apply to her. Therefore, there is no statutory sentencing scheme that applies to those juveniles who were convicted of first degree murder prior to June 25, 2012.

Only the Pennsylvania Legislature can establish the penalty for a crime. 18 Pa.C.S. § 107(b). After the Supreme Court declared the sentencing scheme providing a life without parole sentence unconstitutional, the Legislature was required to enact a penalty statute that satisfied *Miller*. It did. 18 Pa.C.S. § 1102.1(a). However, the new statute applies only to individuals convicted after June 24, 2012. The Legislature specifically noted that the new statute did not apply retroactively.

Because there is no statute establishing the penalty for those juveniles who were convicted of first degree murder prior to the passage of the new penalty statute, the Parole Board cannot act. It is powerless to parole a person serving a life sentence. 61 Pa. Stat. § 331.21 (1941).[2] Additionally, the Parole Board can only grant parole after the minimum term of imprisonment has expired. Because there is no statutory maximum sentence, there is no minimum term in the case of a juvenile who had been convicted of first or second degree murder in Pennsylvania before June 25, 2012. Therefore, parole is not an option and the Parole Board can play no role in executing the new sentence.

If parole is unavailable, the resentencing court's only option may be a flat sentence imposed after conducting the constitutionally mandated sentencing hearing. There is no statutory authority for imposing a minimum sentence for a person convicted of first degree

---

[2] This is the statute in effect at the time of Garnett's conviction. The current statute is 61 Pa.C.S. § 6137(a)(1), which is no different.

murder.  *Commonwealth v. Manning*, 435 A.2d 1207, 1212 n.5 (Pa. 1981); *Castle v. Pa. Bd. of Probation and Parole*, 554 A.2d 625, 628 (Pa. Commw. 1989).[3]

It is not our role to interpret Pennsylvania law in these circumstances.  We do not attempt to usurp the authority of the state court to impose the sentence it deems appropriate so long as it adheres to the constitutionally mandated requirements as set forth in *Miller* and *Montgomery*.

---

[3] Of course, the sentencing court may fashion a sentence that includes a period of less restrictive custody to start after release from prison, such as at a reentry placement or half-way house.  These alternatives may provide the necessary time and assistance to reintegrate offenders who have been out of the mainstream for decades.